UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SERGIO VALDES, an individual

    Plaintiff,

v.                                    Case No: 2:17-cv-417-FtM-29CM

GREATER NAPLES FIRE
RESCUE DISTRICT,

    Defendant.
_____

## ORDER

This matter comes before the Court upon review of Defendant Greater Naples Fire Rescue District's ("Greater Naples") Motion to Compel Forensic Examination of Plaintiff Sergio Valdes' Electronic Devices filed on July 31, 2018. Doc. 20. Plaintiff filed a response in opposition on August 14, 2018, and Greater Naples filed a notice of supplemental authority on August 17, 2018. Docs. 22, 23. For the reasons stated below, the motion is granted in part and denied in part.

### I.    Background

On July 24, 2017, Plaintiff filed a Complaint against Greater Naples alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and a Florida state law covering workers' compensation retaliation claims, Fla. Stat. § 440.205. Doc. 1. Plaintiff claims he was employed with the Ochopee Fire District ("OFD") at the time OFD merged with Greater Naples on November 1, 2016. *Id.* ¶¶ 7-8. Plaintiff claims Greater Naples required him to submit to a "work physical" on October 27, 2016, which required him to fast. *Id.* ¶ 12. Plaintiff alleges he suffered

a "medical emergency" at work that day, due to a "previously unknown medical condition" that was "exacerbated" by the fasting required for his physical.[1] *Id.* ¶ 13. Plaintiff asserts emergency personnel transported him to the hospital and determined he had "an impairment of his cardio-pulmonary system and endocrine system (diabetes)[.]"[2] *Id.* ¶ 14.

Plaintiff alleges Greater Naples classified him as disabled due to his impairment, and Plaintiff required medical leave due to the emergency occurring at work on October 27, 2016, which Greater Naples allegedly "knew about and granted." *Id.* ¶ 17. Plaintiff claims his physician cleared him to return to work on December 28, 2016, "which would conclude his FMLA leave." *Id.* ¶ 18. Plaintiff claims despite his physician's clearance, Greater Naples "not only refused to allow [Plaintiff] to return to work from his FMLA leave on December 28, 2016, but it terminated his employment that same day, which was not discovered by [Plaintiff] until weeks later." *Id.* ¶ 19. Plaintiff alleges Greater Naples interfered with his FMLA rights and retaliated against him for exercising his rights to leave and reinstatement under the FMLA. *Id.* ¶¶ 23-45. Plaintiff also alleges Greater Naples terminated him because of his taking leave to seek treatment for "medical conditions that developed in the workplace" in violation of Fla. Stat. § 440.205. *Id.* ¶¶ 46-52. Greater Naples

---

[1] Greater Naples asserts Plaintiff's medical emergency was due instead to "illegal drug use" that caused him to overdose while at work, noting that "drugs and paraphernalia" were found in Plaintiff's car following the incident. Doc. 20 at 5.

[2] Greater Naples claims Plaintiff was "medically diagnosed" as having suffered a drug overdose, as opposed to complications from a pre-existing condition exacerbated by fasting. *See* Doc. 20 at 6.

responds that "[a]ll employment actions taken against Plaintiff are business related, including but not limited to Plaintiff's reported drug overdose that occurred during the process of his employment application with Defendant and while on duty with [OFD], and not based on any form of protected activity[.]" Doc. 13 ¶ 4. Greater Naples also denies ever employing Plaintiff and describes the required physical referenced in the Complaint as a "pre-employment physical[.]" *Id.* ¶¶ 12, 28.

## II. Analysis

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) requires the court to limit the frequency or extent of discovery where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Rule 34 allows a party to serve on any other party a request to produce within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). A request

for production must state "with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). Rule 34 provides that "[t]he party to whom [a] request [to produce] is directed must respond in writing within 30 days after being served" unless the parties stipulate or the court orders otherwise. Fed. R. Civ. P. 34(b)(2)(A). Under Rule 37, if a party fails to respond to a request for production, the party seeking the discovery may file a motion to compel a response. Fed. R. Civ. P. 37(a)(3)(B)(iv).

Greater Naples moves to compel a forensic examination of Plaintiff's electronic devices; specifically, Greater Naples seeks an order:

> requiring Plaintiff to produce all electronic devices and email account information in his possession so that Defendant's expert may conduct a forensic examination of the devices and email accounts, to include imaging, copying, and inspecting [Plaintiff's] electronic devices including but not limited to his cellular and/or mobile telephone, any and all IPad [sic] or IPad [sic] minis, personal computers, and email accounts.

Doc. 20 at 1. Greater Naples also requests that the Court compel Plaintiff to execute an "Authorization for Release of Social Media Information" ("Authorization form") that Greater Naples included with its second production request. *Id.* at 1-2. In Greater Naples' first set of interrogatories and requests for production, interrogatory number 2 stated:

> 2. Identify all documents, videos, voice recordings, text messages, social media comments, and/or photographs in your possession, custody, or control, which pertain in any way to the allegations contained in your lawsuit, and describe the documents, videos, voice recordings, text messages, social media comments, and/or photographs by subject, date, author, and recipient or addressee.

Doc. 20-1 at 5. Plaintiff provided the following answer on March 23, 2018:

> **RESPONSE:** Per Rule 33(d), please see Plaintiff's documents served in response to Defendant's Request for Production. I am unable to identify any other documents or text messages, because since my termination I have had 5 different phones and am unable to access any of the above other than what I am producing in response to the Request for Production.

*Id.* Greater Naples represents it requested copies of the text messages and other items referenced in its interrogatory number two. *See* Doc. 20 at 5; Doc. 20-1 at 5. According to Greater Naples, in response to its first production requests, Plaintiff produced "portions of various text messages and e-mails sent from his mobile phone between himself and various individuals whom Plaintiff alleges have information related to his claims."[3] Doc. 20 at 5. Greater Naples also represents the produced text messages and emails included discussions between Plaintiff and others regarding Plaintiff's need to enter a drug rehabilitation facility, apparently related to what Greater Naples characterized as a "drug overdose" Plaintiff experienced on October 27, 2016. *See id.* at 5-6.

In response to Plaintiff's answers provided on March 23, 2018, Greater Naples served Plaintiff with its second requests for production on May 25, 2018. Doc. 20 at 5-6; Doc. 20-2. On May 29, 2018, Plaintiff's counsel sent a letter to Greater Naples' counsel in an unsuccessful attempt to resolve disputes regarding Greater Naples' second requests for production. Doc. 20-3 at 5-6. In the letter, Plaintiff's counsel explains that Plaintiff planned to "have an IT professional evaluate [his electronic

---

[3] Greater Naples failed to include copies of Plaintiff's responses to the first requests for production with the present motion. *See* M.D. Fla. R. 3.04(a).

devices] to ascertain what information is recoverable" and produce any further responsive documents recovered.[4] *Id.* at 5. Plaintiff's counsel also suggested a compromise where Greater Naples would "retain a third-party IT professional who will conduct an examination of the devices and deliver a report" to both parties detailing the contents recovered. *Id.* at 5-6. Plaintiff proposed Greater Naples could then "conduct discovery related thereto that is both narrowly tailored and proportional to the needs of the case." *Id.* at 6. The parties apparently could not reach an agreement on Plaintiff's proposals. In its second requests for production, Request One, Greater Naples requested Plaintiff produce for inspection:

> 1. All electronic devices that you have owned, leased, or used from April 2016 to the present, including but not limited to smart phones, cell phones, desk top computers, lap top computers, tablets, iPads, or any other memory devices (*e.g.*, flash memory, external hard drives, USB drives and iPods).

Doc. 20-2 at 4. Plaintiff responded to the request on June 22, 2018:

> **RESPONSE:** Defendant [sic] objects to this request on the basis this request is overly broad and is nothing more than a fishing expedition. The request is interposed solely to harass Defendant [sic] and is an invasion to Plaintiff's right to privacy. Furthermore, it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff lastly objects on the bases stated in the letter from Benjamin Yormak to Reynaldo Velazquez, dated May 29, 2018, attached hereto.

Doc. 20-3 at 2. Also in its second requests to produce, Request Six, Greater Naples requested that Plaintiff:

> 6. Execute and produce the Authorization for Release of Social

---

[4] It is unclear whether Plaintiff in fact had an IT professional evaluate the devices or whether he produced further responsive documents to Greater Naples, but the Court reminds Plaintiff that he is under a continuing duty to supplement his discovery responses and produce responsive materials discovered before or during trial. *See* Fed. R. Civ. P. 16(c).

> Media Information attached hereto as Exhibit A.

Doc. 20-2 at 4; *see also* Doc 20-2 at 7. Plaintiff responded on June 22, 2018:

> **RESPONSE:** Not applicable. Plaintiff does not participate in any social media.

Doc. 20-3 at 3. Unsatisfied with Plaintiff's responses to the second request for production, Greater Naples filed the present motion on July 31, 2018. Doc. 20. Plaintiff responded in opposition on August 14, 2018. Doc. 22. That same day, Greater Naples deposed Plaintiff, and on August 17, 2018 filed a notice advising the Court that Plaintiff claimed during the deposition he "lost his current cell phone four days prior" and asserting Plaintiff's behavior is a "complete disregard of the judicial process[.]" Doc. 23 at 1.

Greater Naples argues Request One is "reasonably calculated to lead to the discovery of admissible evidence"[5] because Plaintiff previously produced relevant text messages that included discussions about Plaintiff entering a drug rehabilitation facility following his alleged drug overdose, and thus "Plaintiff has used at least his cell phone to communicate pertaining to issues relevant to this litigation[.]" Doc. 20 at 6. Greater Naples asserts Request One is not overbroad because it is limited to Plaintiff's electronic devices he owned or used from April 2016 to present, "and Greater Naples is only interested in communications that are material to this litigation." *Id.* at 7. Greater Naples claims Plaintiff's failure to maintain

---

[5] Greater Naples incorrectly states the standard for permissible discovery, as did Plaintiff in his response to Request One. *See* Doc. 20-3 at 2; Fed. R. Civ. P. 26(b)(1).

possession of at least "five cell phones"[6] containing information that could lead to admissible evidence should subject to Plaintiff to "sanctions including, but not limited to, dismissal with prejudice of the instant lawsuit" because it appears Plaintiff has "destroyed or failed to preserve relevant information[.]"  *Id.* at 5, 7 (citation omitted). Greater Naples also submitted proposed conditions for collection and review of information gathered by the proposed forensic examination.  *Id.* at 11-12 (citations omitted).

Regarding Request Six,[7] Greater Naples asserts Plaintiff did not object to the request and instead improperly refused to execute the Authorization form; thus, "Plaintiff must produce the executed release because he did not object to the request and Greater Naples is entitled to serve third-party subpoenas to social media providers in light of the previous communications produced during this litigation." *Id.* at 7.  Further, Greater Naples argues if Plaintiff's claim that he does not use any social media is true, "there is no reason to refuse to sign the requested release" to allow Greater Naples to confirm his claim.  *Id.*

Plaintiff argues the discovery sought by Request One is overly broad and not proportional to the needs of the case.  Doc. 22 at 3.  Plaintiff asserts the relevant

---

[6] Greater Naples filed a Notice of Supplementary Authority on August 17, 2018, in which it notes it deposed Plaintiff on August 14, 2018.  Doc. 23.  Greater Naples alleges Plaintiff claimed during the deposition that "he lost his current cell phone four days prior to the deposition by dropping it in a body of water[,]" which would be the third cell phone Plaintiff owns that has sustained water damage and the second Plaintiff "purportedly lost into a body of water."  *Id.* at 1.

[7] Plaintiff has agreed to comply with Request Six and execute and produce the Authorization form Greater Naples requested.  Doc. 22 at 11 n.3.

inquiry under the FMLA claim is whether Greater Naples believed Plaintiff used drugs on October 27, 2016, not whether it "was ultimately correct in its suspicion[,]" and thus Greater Naples' request for electronic communications that might show Plaintiff used drugs is overbroad. *See id.* Plaintiff argues under the worker's compensation retaliation claim, Plaintiff must show the justification Greater Naples gave for refusing to rehire him was a pretext for the true reason, which similarly focuses on Greater Naples' subjective belief and not the truth or falsity of the belief. *Id.* at 5 (citations omitted). Plaintiff also asserts the relevant time period in the case is from October 27, 2016 to November 1, 2016, the date of the merger of OFD and Greater Naples and the approximate date Greater Naples took adverse employment action against Plaintiff. *Id.* at 1; *see also* Doc. 1 at ¶¶ 7-8. Based on that, Plaintiff argues "what is relevant was what the Defendant knew at the time it made its adverse employment decision as to the Plaintiff[,]" and Greater Naples fails to allege that the reason it refused to rehire Plaintiff was "influenced by any electronic communications at all, let alone electronic communications from the Plaintiff." Doc. 22 at 6.

Plaintiff asserts Greater Naples' request to conduct a forensic examination "is a gross invasion of the Plaintiff's privacy rights and is not remotely proportional to the needs of this case" and that "more narrowly tailored requests may have been defensible, but these requests are not." *Id.* at 6-7. Plaintiff also requests the Court award attorney's fees to Plaintiff "for having to defend this easily-avoidable" motion.

*Id.* at 10-11. As to Request Six, Plaintiff has agreed to comply and execute the Authorization form Greater Naples requested. *Id.* at 11 n.3.

Motions to compel are committed to the discretion of the district court. *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). For a motion to compel the production of electronically stored information ("ESI"), the responding party does not need to provide "information from sources that the responding party identifies as not reasonably accessible because of undue burden or cost." *U & I Corporation v. Advanced Medical Design, Inc.*, 251 F.R.D. 667, 674 (M.D. Fla. 2008). Before granting a motion to compel forensic examination of electronic devices, the court must weigh the utility of the proposed examination against inherent privacy concerns. *Klayman v. City Pages*, No. 5:13-cv-143-Oc-22PRL, 2014 WL 5426515, at *5 (M.D. Fla. Oct. 22, 2014) (citing *Wynmoor Community Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687 (S.D. Fla. 2012)). Regarding discovery of ESI, the Middle District of Florida Discovery Handbook states, in relevant part:

> The discovery of ESI should be proportional to the amount in controversy, the nature of the case and the resources of the parties. Rule 26(b)(2)(C) imposes a duty on the parties to balance the need for the discovery with the burdens of production. Rule 26(b)(2)(B) expressly provides that a party does not have to provide discovery of ESI that is not reasonably accessible because of undue burden or cost except on motion and order of the Court.

Middle District Discovery (2015) at 26 VII(C). Further, "[i]nspection of an opponent's computer system is the exception, not the rule and the creation of forensic

image backups of computers should only be sought in exceptional circumstances which warrant the burden and cost." *Id.* at 26 VII(E).

Here, the Court does not find exceptional circumstances exist to warrant the burden and cost of Greater Naples' extensive request for production. First, Greater Naples' request for "all [Plaintiff's] electronic devices and email account information[,]" for devices he owned from April 2016 to the present, including cell phones, computers, and iPads, is overly broad and not proportional to the needs of the case. *See* Doc. 20 at 1, 7; Fed. R. Civ. P 26(b)(1); Middle District Discovery (2015) at 26 VII(C). The allegations in the Complaint involve events occurring from, at most, approximately October 27, 2016 to December 28, 2016. Doc. 1 at ¶¶ 8, 12, 19. Further, as Plaintiff argues, Greater Naples' request apparently is made for the purpose of discovering whether Plaintiff objectively was a drug user at any time from April 2016 to the present, while the causes of action under the FMLA and Fla. Stat. § 440.205, and Greater Naples' defenses, focus on Greater Naples' subjective belief that Plaintiff used drugs and overdosed while on duty on October 27, 2016. *See* Doc. 22 at 4-5 (citing, *e.g., Grovner v. Ga. Dep't of Nat. Res.*, 646 F. App'x 805, 809 (11th Cir. 2016); *Ortega v. Eng'g. Sys. Tech., Inc.*, 30 So. 3d 525, 528 (Fla. Dist. Ct. App. 2010)); *see also* Doc. 13 at ¶¶ 4-9, 26.

There is also little indication that relevant information regarding Plaintiff's alleged drug use will be gleaned from Greater Naples' extreme request for forensic inspection of all of Plaintiff's electronic devices owned since April 2016, besides the fact Plaintiff previously produced some text messages and emails in which he

allegedly discussed the possibility of entering drug treatment.[8]  *See* Doc. 20 at 5. Greater Naples also failed to include the previously produced "piecemeal" text messages with its motion to compel; thus, the Court is unable to ascertain the precise content of the communications and consider the full extent of Plaintiff's production efforts regarding text messages and other communications.  *See id.*  As to Greater Naples' suggestion that Plaintiff be sanctioned for potential "spoliation of evidence[,]" there is no evidence of Plaintiff committing any *intentional* spoliation, and Plaintiff is not subject to sanctions without such evidence.  *See* Doc. 20 at 5; Doc. 20-3 at 6; *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997); *Optowave Co., Ltd. V. Nikitin*, No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *7 (M.D. Fla. Nov. 7, 2006) (citation omitted).  Further, Greater Naples' proposed forensic examination would be invasive and likely uncover a wide range of personal and private information unrelated to Plaintiff's FMLA allegations.  In weighing the utility of Greater Naples' request against inherent privacy concerns, the Court finds the privacy invasion that Greater Naples' expansive electronic investigation would involve outweighs the usefulness of the proposed investigation.  *See Klayman*, 2014 WL 5426515, at *5; *see also Martinez v. Rycars Const., LLC*, No. CV410-049, 2010 WL 4117668, at *2 (S.D.

---

[8] It is also unclear that this disclosure, or any communication in which Plaintiff referenced drug use generally or on any date besides October 27, 2016, is particularly useful to Greater Naples, since the main issue regarding Plaintiff's alleged drug use is whether Greater Naples legitimately believed he used drugs on that date specifically, and whether that was the true reason they decided not to rehire him.  *See* Doc. 1 at ¶¶ 7-22; Doc. 13 at ¶¶ 4-9, 26; 29 U.S.C. § 2601 *et seq.*; Fla. Stat. § 440.205.

Ga. Oct. 18, 2010) (ordering production of cell phone records "can easily cut very personal" and "is overbroad and unacceptably annoying.")

Although Greater Naples' request to forensically examine all of Plaintiff's electronic devices owned from April 2016 to the present is overly broad and not proportional to the needs of the case, it is possible responsive material exists on one or more of Plaintiff's devices. *See* Doc. 20 at 1. Greater Naples, however, has not met its burden to warrant an order compelling production of the devices; specifically, Greater Naples failed to sufficiently specify and tailor its requests and failed to supply sufficient information for the Court to determine what production to which Greater Naples may be entitled and fashion appropriate directives to the parties about such production. The Court will therefore deny without prejudice Greater Naples' request for an order compelling production of Plaintiff's electronic devices for forensic examination. The Court will grant, however, Greater Naples' request to compel Plaintiff to execute and produce the Authorization form, as the Court finds this request reasonable, and Plaintiff does not oppose it. *See* Doc. 22 at 11.

Finally, regarding the award of attorney's fees and expenses incurred in litigating a motion to compel, Rule 37 states: (1) if the motion is granted, the court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, unless exceptional circumstances exist; (2) if the motion is denied, the court must require the movant to pay the party who opposed the motion its reasonable expenses, but must not so require "if the motion was substantially

justified"; and (3) if the motion is granted in part and denied in part, the court *may* "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5).

Here, the Court declines to award attorney's fees or expenses to either party. The motion to compel is being granted in part and denied in part; and although the Court finds Greater Naples' request for production of all Plaintiff's electronic devices to be overbroad, reasonable minds may differ on the utility of the proposed examination and the justification of Greater Naples' motion to compel. *See* Fed. R. Civ. P. 37(a)(5). Further, the motion was necessitated in part by Plaintiff's refusal to produce, and failure to properly object to, a relatively simple request that Plaintiff sign a social media information release. *See* Doc. 20 at 7. As Greater Naples correctly notes, if Plaintiff's assertion that he does not use any social media is true, there was no reason for Plaintiff to refuse to produce the release in the first place. *See id.*

ACCORDINGLY, it is

**ORDERED:**

Defendant's Motion to Compel Forensic Examination of Plaintiff Sergio Valdes' Electronic Devices (Doc. 20) is **GRANTED in part and DENIED in part**. Defendant's request to compel Plaintiff to execute the Authorization form is **GRANTED**; Defendant's request to compel forensic examination of Plaintiff's electronic devices is **DENIED without prejudice**. Plaintiff shall execute and produce the Authorization form to Defendant's counsel by **September 20, 2018.**

**DONE** and **ORDERED** in Fort Myers, Florida on this 7th day of September, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record
*Pro se* parties